IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HARRY R. WIEDENBECK and RHONDA
L. WIEDENBECK, on behalf of
themselves and all others who are similarly
situated,

|  |  |  |
|---|---|---|
| Plaintiffs, | | OPINION AND ORDER |
| v. | | |
| | | 12-cv-508-wmc |

CINERGY HEALTH, INC., AMERICAN
MEDICAL AND LIFE INSURANCE
COMPANY, and NATIONAL CONGRESS
OF EMPLOYERS, INC.,

Defendants.

In this action, plaintiffs husband and wife Harry R. Wiedenbeck and Rhonda L. Wiedenbeck allege that defendants Cinergy Health, Inc., American Medical and Life Insurance Company ("AMLI") and National Congress of Employers, Inc. ("NCE") used false and misleading infomercial advertisements to induce their purchases of a "comprehensive" medical benefit plan that was, in fact, deceptively limited and then acted in bad faith in denying coverage. Before the court is defendant AMLI's motion to dismiss for lack of jurisdiction, its motion for judgment on the pleadings, and plaintiffs' related motion to amend their complaint to add additional allegations concerning AMLI's involvement in the alleged fraud. (Dkt. ##40, 48, 57.) Also before the court is

plaintiffs' motion for class certification of their fraudulent advertising claim. (Dkt. #42.)[1]

For the reasons more fully described below, the court will deny defendant AMLI's motion to dismiss for lack of subject matter jurisdiction, finding that its Rule 68 offer of judgment did not offer complete relief and, therefore, did not render plaintiffs' claims moot. The court will grant plaintiffs leave to amend their complaint, finding good cause for the amendment. The court will also deny AMLI's motion for judgment on the pleadings, finding plaintiffs' amended complaint sufficient to state claims for both fraud and bad faith. As for class certification, the court will deny plaintiffs' motion for several reasons, most notably because the proposed class does not meet the predominance requirement of Fed. R. Civ. P. 23(b).

FACTS[2]

**A. Parties**

The complaint and amended complaint are sparse when it comes to details about the parties. Plaintiffs husband and wife Harry R. and Rhonda L. Wiedenbeck are residents of Wisconsin. From its website, the court discerns that defendant AMLI is a "specialty risk insurer" offering limited medical benefits health insurance among other

---

[1] While the complaint and amended complaint also seeks class certification of their bad faith allegation, plaintiffs only move for certification of a class on their fraud claim.

[2] As explained below, the court will grant plaintiffs' motion for leave to amend its complaint. As such, the court draws the following allegations and all reasonable inferences from the amended complaint for purposes of deciding AMLI's motion for judgment on the pleadings.

products.  *See* http://www.usamli.com/about-amli/ (last visited August 19, 2013).  AMLI issued the limited medical benefits health insurance policy purchased by plaintiffs and the putative class.   Defendant Cinergy purports to be a "nationwide provider of affordable health and life insurance products" *see* http://www.cinergyhealth.com/ (last visited August 19, 2013), and allegedly marketed the insurance policy at issue in this case.  Lastly, defendant National Congress of Employers is a "national association that represents America's small and medium sized businesses."  *See* http://www.thence.org/ (last visited August 19, 2013).  NCE allegedly also was involved in the marketing of AMLI's limited medical benefits insurance policy to its members, though plaintiffs do not allege that they are, or are affiliated with, members of NCE.

### B.  Background

Effective January 1 and December 1, 2007, defendant AMLI entered into written agreements with defendants Cinergy and NCE to issue and market a "Limited Medical Benefit Plan" to enroll purchasers, and bill and collect premiums.  On or before March 1, 2009, AMLI, Cinergy and NCE also entered into an agreement that authorized Cinergy to market AMLI's "limited benefit" health insurance policies to NCE "members."  Cinergy subsequently engaged in marketing in Wisconsin by internet and television "infomercials."  Plaintiffs allege that AMLI approved (1) a television advertisement that ran in Wisconsin and (2) a sales script used by employees at a Cinergy call center.

Plaintiffs allege generally that Cinergy's marketing was "intentionally misleading in that it, among other things, misrepresented the [AMLI] limited benefit health

insurance policies as a comprehensive plan providing major medical coverage, with no exclusions for pre-existing conditions." (Am. Compl. (dkt. #48-1) ¶ 11.) Plaintiffs further allege that NCE and AMLI were fully aware of Cinergy's marketing and approved it.[3]

Plaintiffs further allege that all three defendants were involved in a "scheme, pattern and undertaking to deny, delay and underpay claims." (Am. Compl. (dkt. #48-1) ¶ 20.) Specifically, plaintiffs allege that defendants (1) made it difficult to determine which entity was responsible for responding to and answering questions about claims; (2) routinely denied claims by misapplying the pre-existing condition limitation; (3) mis-classified claims by misusing billing and diagnoses code information in order to exclude claims from coverage; and (4) delaying responses to claims for weeks and months.

### C. Plaintiffs' Alleged Experiences

On April 26, 2009, Harry Wiedenbeck saw the Cinergy "infomercial" on television. Based on certain representations that the policy covered "major medical expenses without exclusions for pre-existing conditions," Harry called the toll free number. (Am. Compl. (dkt. #48-1) ¶ 24.) During the call, plaintiffs allege in their complaint that the Cinergy representative "did nothing to correct Mr. Wiedenbeck's misperception concerning the nature of the American Medical policy, continuing to

---

[3] Plaintiffs' complaint also details consumer complaints and other states' sanctioning of Cinergy, NCE and AMLI for these alleged misrepresentations. (Am. Compl. (dkt. #48-1) ¶¶ 13-17.)

mislead him about the nature of the coverage consistent with the infomercial and Cinergy's marketing scheme."  (*Id.*)[4]

During the call, Mr. Wiedenbeck provided his credit card information to the Cinergy representative and authorized automatic charges of the monthly premium.  No documents were provided to plaintiffs at the time of purchase.  At some later point, plaintiffs received a letter from AMLI confirming they were "covered under a group limited medical insurance certificate underwritten by [AMLI], effective May 15, 2009." (*Id.* at ¶ 26.)

On October 27, 2009, Rhonda Wiedenbeck was admitted to Grant Regional Health Center for evaluation of disorientation.  Additional testing was recommended. AMLI then was contacted to approve Mrs. Wiedenbeck's admission in the hospital for overnight stay.  Based on the AMLI representative's representation that this would be acceptable, Mrs. Wiedenbeck stayed overnight at the hospital for observation and testing.  The hospital submitted the bill to AMLI for payment.  AMLI initially denied the claim on the basis that the hospitalization was for a "pre-existing condition."  At some later point, AMLI again denied the claim because the hospitalization was for a "mental health" condition, which was excluded from coverage.

---

[4] Plaintiffs submitted the transcript of the call between Harry Wiedenbeck and the Cinergy representative as part of class certification. (Affidavit of Lynn R. Laufenberg ("Laufenberg Aff."), Ex. 12 (dkt. #44-12).)  As discussed below, this exchange challenges plaintiffs' characterization that the representative "did nothing" to correct any misapprehensions.  The transcript, however, was not submitted in support of AMLI's motion for judgment on the pleadings, and the court has not considered it for that purpose despite its potential to control on summary judgment. *See Sullivan v. Cuna Mut. Ins. Soc.*, 683 F. Supp. 2d 918, 923 (W.D. Wis. 2010) ("Where an exhibit and the complaint conflict, the exhibit typically controls.").

In trying to secure coverage of this claim, plaintiffs allege that they first discovered the "true nature of the [AMLI] policy -- that it was a 'limited benefits' policy which would cover only a small fraction of the hospitalization charges."  (*Id.* at ¶ 29.)  The Wiedenbecks also allege that they experienced "delay and frustration" in attempting to secure coverage of Mrs. Wiedenbeck's hospital claim.  (*Id.* at 30.)  Ultimately, the bill for the hospital care was referred to a collection agency, threatening the Wiedenbeck's credit and reputation.   The Wiedenbecks contend that because of defendants' misrepresentations and denials of coverage, they incurred "substantial personal expense in the form [of] premium payments for the purchased policy, the Grant Regional Health Center billing and other economic and non-economic damage in an amount to be determined by a jury."  (*Id.* at ¶ 31.)  On February 15, 2012 -- almost 52 months after Mrs. Wiedenbeck's hospitalization -- AMLI agreed to pay the full amount of the required benefit under the insurance policy plus interest.

### D. Plaintiffs' Claims and Proposed Class Action

Plaintiffs assert two causes of action:  (1) fraud based on the alleged "intentional misrepresentations made by Cinergy, with [AMLI's] and NCE's knowledge and consent" that the "policies were comprehensive, covering major medical and not excluding pre-existing conditions"; and (2) bad faith breach of the fiduciary relationship between an insurer and an insured.  (Am. Compl. (dkt. #48-1) ¶¶ 47, 53.)

In the amended complaint, plaintiffs seek to represent a class consisting of:  "All Wisconsin residents who purchased an [AMLI] insurance policy marketed by Cinergy."

6

(*Id.* at ¶ 34.)  Plaintiffs also seek to represent a subclass consisting of:  "All Wisconsin residents who have purchased an [AMLI] insurance policy marketed by Cinergy *and* who have incurred unreimbursed medical expenses on claims submitted under that policy." (*Id.* at ¶ 35 (emphasis added).)[5]  In their motion for class certification, however, plaintiffs clarify that they seek to certify a class based on the fraud cause of action only.

### E.  Offer of Judgment

On February 1, 2013, AMLI served plaintiffs with an Offer of Judgment in the amount of $20,000 pursuant to Federal Rule of Civil Procedure 68 to plaintiffs to resolve "all of Plaintiffs' claims for relief," including "all of Plaintiffs' costs."  (Affidavit of Ronald S. Stadler ("Stadler Aff."), Ex. 9 (dkt. #56-9).)

OPINION

### I.  Jurisdiction under CAFA

As an initial matter, the court required plaintiffs to file "a jurisdictional brief pleading the actual state of incorporation of each defendant and explaining why and how the jurisdictional amount under CAFA is satisfied."  (6/24/13 Opinion & Order (dkt. #68) 4.)  Having reviewed plaintiffs' response, the court is now satisfied that it has jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

---

[5] The court addresses plaintiffs' evidence offered in support of the class action requirements in the opinion below.

Specifically, plaintiffs submitted materials demonstrating a possible "restitutionary damages" award exceeding $5,000,000, which does not account for a possible punitive damages award. (Pls.' Jurisdictional Br. (dkt. #69) 3.) In reply, defendants submitted a letter to the court indicating that plaintiffs' estimate of what is at stake is not "legally impossible." (Defs.' Resp. (dkt. #72) (quoting *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011)). The court finds this showing sufficient to establish that the amount in controversy requirement is met.

As for the minimal diversity requirement under CAFA, there appears to be actual, complete diversity here. Plaintiffs Harry and Rhonda Wiedenbeck are citizens of the State of Wisconsin and purport to represent a class of Wisconsin citizens. Defendant Cinergy is incorporated in the State of Florida with its principle place of business in Sunrise, Florida; defendant AMLI is incorporated in the State of New York with its principle place of business in New York, New York; and defendant NCE is incorporated in the State of Delaware with its principle place of business in Garden City, New York. (Affidavit of Lynn R. Laufenberg, Ex. 1 (dkt. #70-1).) Finally, in the complaint, plaintiffs allege that there are "hundreds, possibly thousands of putative Class Members." (Am. Compl. (dkt. #48-1) ¶ 38.) In the class certification brief, plaintiffs represent that 2,700 Wisconsin citizens have purchased AMLI policies. (Pls.' Br. in Supp. of Class Cert. (dkt. #43) ¶ 37.)[6]

---

[6] The court also finds that the discretionary and mandatory exceptions to jurisdiction under CAFA do not apply because none of the defendants are citizens of the State of Wisconsin.

In light of the allegations in plaintiffs' complaint, coupled with the supplementary materials provided in response to this court's previous order, the court is satisfied that this case is properly before it.[7]

## II. Motion to Dismiss for Lack of Subject Matter Jurisdiction

In its first motion, defendant AMLI argues that plaintiffs' claims are mooted by defendant AMLI's $20,000 offer of judgment on February 1, 2013, which it contends deprives the court of subject matter jurisdiction over plaintiffs' individual claims and class claims. (Dkt. #57.)[8] AMLI contends that plaintiffs' damages are limited to "either the $930 benefit that was originally denied or the $9,181.95 that they paid in premiums." (Defs.' Opp'n to Pls.' Mot. for Class Cert. (dkt. #55) 30-31.)[9] AMLI

---

[7] The court's decision denying class certification does not upend its jurisdiction under CAFA. *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010) ("[F]ederal jurisdiction under the Class Action Fairness Act does not depend on certification.").

[8] AMLI also refers to a $2,000 offer made before plaintiffs filed suit. Rule 68 only applies to offer made after the commencement of an action. *See* 12 Charles Alan Wright *et al.*, Federal Practice and Procedure § 3003 (2d ed. 1997). Even if it did apply, the court's finding that the subsequent $20,000 offer did not moot plaintiffs' claim necessarily renders the $2,000 pre-action offer inconsequential.

[9] AMLI also contends that plaintiffs must either (1) affirm the contract and seek damages for breach or (2) pursue the equitable remedy of rescission and seek restitutionary damages. (Defs.' Opp'n to Pls.' Mot. for Class Cert. (dkt. #55) 31 n.17 (citing *Digicorp, Inc. v. Ameritech Corp.*, 262 Wis. 2d 32, 65, 662 N.W.2d 652 (2003)).) The court need not resolve this issue to find that plaintiffs' claims are not mooted by AMLI's $20,000 offer of judgment because plaintiffs' claim to punitive damages and injunctive relief pushes their demand above the offer regardless of any obligation to choose between breach of contract and restitutionary damages.

further argues that plaintiffs have not demonstrated a right to punitive damages and that they are only entitled to attorneys' fees for their bad faith claim.

As an initial point, AMLI argues plaintiffs' claims are moot in the context of opposing plaintiffs' motion for class certification in light of the Seventh Circuit's holding in *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011), and the Supreme Court's more recent decision in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013). The determination of whether plaintiffs' individual claims are moot, however, is an independent one from its possible impact on plaintiffs' class claims. In other words, where plaintiffs have moved for class certification on only one claim as here, the offer of judgment still must satisfy *all* of plaintiffs' claims for relief to render them moot. *See Damasco*, 662 F.2d at 894-95 ("Once the defendant offers to satisfy the plaintiff's *entire demand*, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." (emphasis added)).

In support of its motion, AMLI argues that the $20,000 offer more than satisfied plaintiffs' compensatory damages because that amount is "more than two times" the amount plaintiffs paid in premiums, but this argument fails to account for other categories of compensatory damages allowed under plaintiffs' bad faith claim. As explained by Wisconsin courts, "bad faith is a tort 'separate and apart from a breach of contract.'" *Kimble v. Land Concepts, Inc.*, 2012 WI App 132, ¶ 31, 345 Wis. 2d 60, 823 N.W.2d 839 (unpublished) (quoting *Anderson v. Cont'l Ins. Co.*, 85 Wis. 2d 675, 686, 271 N.W.2d 368, 374 (1978)); *see also Maxwell v. Hartford Union High Sch. Dis.*, 2012 WI 58,

10

¶ 57, 341 Wis. 2d 238, 814, N.W.2d 484 (explaining that damages due to an insurer's bad faith "are not an expansion of the coverage under the insurance policy" but are "a reflection of the insurer's tortious conduct").  If successful in demonstrating bad faith, plaintiffs would be entitled to "any damages which are a proximate cause of that conduct." *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 570, 547 N.W.2d 592, 596 (1996); *see also Maxwell*, 2012 WI 58, at ¶ 58 (holding that under a bad faith claim, "insurers are liable for the damages they cause by breach of contract or by tortious breach of duties arising from the contract").  Here, the complaint alleges that AMLI switched the reason for its denial of coverage and delayed granting coverage for over two years. (Am. Compl. (dkt. #48-1) ¶ 28.)  Further, plaintiffs allege that they experienced "delay and frustration" because of defendants' actions, including Grant Regional referring the bill to a collection agency, which, in turn, threatened plaintiffs' credit reputation.  (*Id.* at ¶ 30.)  Certainly, if found liable by the trier of fact, this alleged tortious conduct could result in a damages award exceeding $10,819.05.[10]

In arguing that the $20,000 offer constitutes complete relief, AMLI also argues that plaintiffs have not demonstrated that it "acted maliciously toward the plaintiff or in an intentional disregard of the rights of plaintiff," as required for an award of punitive damages under Wis. Stat. § 895.043(3).  (AMLI's Opp'n to Pls.' Class Cert. Mot. (dkt.

---

[10] In its reply brief, AMLI argues that the court can also disregard any damages associated with plaintiffs bad faith claim because that claim should be dismissed pursuant to its separate motion for judgment on the pleadings.  (AMLI's Reply (dkt. #66) 2.)  Because the arguments made in AMLI's motion for judgment on the pleadings have also been rejected for the reasons set forth elsewhere in this opinion, plaintiffs' bad faith claim, as well as the damages that may be awarded as part of that claim, are properly a part of the court determining whether the Rule 68 offer of judgment offered complete relief.

#55) 31-33.)   Curiously, defendants' focus this argument on the impropriety of a punitive damages award based on plaintiffs' fraud claim, even though plaintiffs may also be entitled to punitive damages on the bad faith claim should the trier of fact find that defendants intentionally denied coverage for shifting, meritless reasons.   *See Lorenz v. Rural Mut. Ins. Co.*, 209 Wis. 2d 83, 562 N.W.2d 926, 1997 WL 64317, at *4 n.5 (Ct. App. 1997) (unpublished) (citing cases where Wisconsin courts upheld award of punitive damages based on insurer's inconsistent or waffling grounds for denial of coverage).[11]   In any event, whether plaintiffs will ultimately be able to muster sufficient evidence to support a punitive damages verdict question for the jury is not material at this stage in the proceeding.   Plaintiffs' allegation that defendants intentionally mislead them as to the scope of AMLI's limited benefit insurance policy is sufficient to support plaintiffs' request for punitive damages.   *Lundin v. Shimanski*, 124 Wis. 2d 175, 196, 368 N.W.2d 676, 686 (1985) ("[P]unitive damages may be awarded for intentional misrepresentation.")

Finally, while not argued by either party, plaintiffs also seek injunctive relief -- an order requiring defendants to cease their alleged, wrongful practices.   (Am. Compl. (dkt. #48-1) p.13.)   This, too, must be factored into a determination of the total value of

---

[11] Similarly, AMLI contends that plaintiffs are not entitled to attorney's fees for their misrepresentation claim, citing *Gorton v. Am Cynamid Co.*, 194 Wis. 2d 203, 230, 533 N.W.2d 746, 757 (1995).   (AMLI's Opp'n to Pls.' Class Cert. Mot. (dkt. #55) 33.)   In making this argument, AMLI implicitly acknowledges -- as it must -- that plaintiffs still would be entitled to attorney's fees for their bad faith claim.   AMLI's argument that its $20,000 offer moots plaintiffs' claims, therefore, utterly fails to account for an attorney's fees award, even if the award only covers fees associated with one of plaintiffs' two claims.

plaintiffs' claims.  *Gates v. City of Chi.*, 623 F.3d 389, 394 (7th Cir. 2010) (rejecting defendant's argument that case was rendered moot where defendant failed to "meet the plaintiff's demands" to enjoin certain practices).

For all of these reasons, the court finds that AMLI's Rule 68 offer of judgment is not sufficient to meet plaintiffs' "entire demand" for relief.  *See Damasco*, 662 F.2d at 894-95.  Accordingly, the court will deny defendant AMLI's motion to dismiss on mootness grounds.

## III. Motion for Judgment on the Pleadings and Motion to Amend

### A.  Motion to Amend Complaint

On March 1, 2013, in response to AMLI's motion for judgment on the pleadings, plaintiffs filed (1) an opposition brief and (2) a motion for leave to amend their complaint to add new allegations.  Not surprisingly, the latter motion was an attempt to address some of the claimed defects in the original complaint identified in AMLI's motion for judgment on the pleadings.  (Dkt. ##47, 48.)

As set in the preliminary pretrial conference order, the deadline for amending pleadings was November 21, 2012.  (Dkt. #19.)  Once an amendment deadline is set by the court, a party seeking to amend bears the burden of showing "good cause" for further amendments.  *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citing Fed. R. Civ. P. 16(b)).

In its motion for judgment on the pleadings, AMLI points to certain defects in plaintiffs' pleading that could have been raised in a motion to dismiss.  If AMLI had done

13

so, plaintiffs obviously could have amended their complaint before the court-imposed deadline without leave or showing of good cause.  Moreover, the relatively late notice of alleged defects in their pleading, coupled with plaintiffs prompt filing of its motion for leave to amend on the heels of AMLI's production of discovery that served as the factual basis for the amendment, is sufficient to constitute good cause under Rule 16(b).[12] Accordingly, the court will grant plaintiffs' motion for leave to amend their complaint.[13]

### B.  Motion for Judgment on the Pleadings

####   i.   Fraud Claim

AMLI's challenge to the sufficiency of plaintiffs' fraud claim is meritless.  The complaint alleges that AMLI entered into an agreement with Cinergy to market a restrictive health insurance policy, and that AMLI approved a television advertisement and sales script which contained misrepresentations about the scope of the policy's coverage.  (Am. Compl. (dkt. #48-1) ¶¶ 8-11.)  Plaintiffs' allegation that Cinergy falsely marketed the policy with AMLI's "full knowledge and consent" is sufficient to satisfy the

---

[12] All of that said, the original complaint appears sufficient to meet Fed. R. Civ. P. 9 requirements for pleading with particularity as to the intentional misrepresentation claim, although the amended pleading provides additional details about the relationship between Cinergy and AMLI.

[13] While granting the motion, the court is somewhat sympathetic to AMLI's concern that plaintiffs' amended pleading presents a moving target.  To ameliorate this prejudice, the court will also consider AMLI's motion for judgment on the pleadings in light of the amended complaint without requiring them to re-file their motion once again.  NCE also opposed plaintiffs' motion to for leave to amend, on the basis that it is a "bit player." (NCE's Opp'n (dkt. #59) 1.)  While perhaps true (especially with respect to plaintiffs' bad faith claim), NCE has not moved for dismissal, even after indicating it intended to do so.  (*Id.*)  Absent an appropriate motion, NCE will remain a defendant in this action.

requirements of Federal Rule of Civil Procedure 8.  The heightened pleading standard of Rule 9 is also met.  The complaint alleges that Cinergy, with AMLI and NCE's knowledge and approval (the "who"), misrepresented the scope of coverage of the policy at issue (the "what") in television advertisements and standard sales scripts (the "where") beginning in 2009 (the "when").

AMLI argues that plaintiffs' fraud claim is nevertheless deficient because it fails to plead that AMLI had a duty to correct misapprehensions on the part of the Wiedenbecks.  Whether plaintiffs' fraud claim rests in part on a theory that defendants failed to correct a misapprehension, which in-turn may rest on whether AMLI had a duty to correct plaintiffs' misapprehension, are issues for another day.  Plaintiffs' allegation that Cinergy affirmatively and knowingly misrepresented the scope of the coverage in failing to describe adequately its limited nature and the pre-existing condition provision is sufficient at this stage.

### ii.    Bad Faith Claim

AMLI also argues that plaintiffs' bad faith claim fails as a matter of law because plaintiffs fail to allege the terms of the insurance policy that were breached.  (AMLI's Mot. for J. on the Pleadings (dkt. #41) 9.)   In pursuing this argument, AMLI stresses that plaintiffs must "plead facts" (*id.* (emphasis in original)) but fails to explain how plaintiffs' allegations are inadequate to place defendants on notice of the contours of the claim or render the claim implausible.

To prove a claim of bad faith against an insurer, plaintiffs must establish: "(1) the insurance contract provided coverage and required payment by the insurer; (2) there was no reasonable basis for the insurer to deny the insured's claim for benefits under the policy; and (3) the insurer knew of, or recklessly disregarded, the lack of a reasonable basis to deny the claim." *Kimble*, 2012 WI App 132, ¶ 32 (citing *Brethorst v. All State Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶¶ 36, 49, 53-54, 334 Wis. 2d 23, 798 N.W.2d 467). The complaint alleges that Mrs. Wiedenbeck was hospitalized for tests and that hospital care was covered up to a certain limit as part of the insurance policy. (Am. Compl. (dkt. #48-1) ¶ 27.) Plaintiffs further allege that defendants denied coverage for illegitimate and shifting reasons. (*Id.* at ¶ 28.)

From these allegations alone, one may infer, at least for pleading purposes, that plaintiffs are alleging defendants lacked a reasonable basis to deny the claim. (*Id.* at ¶ 30.) The fact that defendants subsequently covered a substantial portion of the hospital costs might also form a factual basis to infer that defendants lacked a reasonable basis to deny the claim outright in the first instance, although this is by no means obvious.[14] These allegations are, therefore, sufficient to make out a bad faith claim for pleading purposes.


## IV. Motion for Class Certification

As an initial matter, plaintiffs seek leave to supplement their class certification submission with the expert report of Elliott S. Flood. (Dkt. #76.) While defendants are

---

[14] Depending upon the circumstances, the fact of payment may not even be admissible, but this is again for consideration later in the case.

16

correct that plaintiffs failed in their motion for leave to supplement to explain: (1) how Flood's opinions weigh on class certification; or (2) why such a report could not have been timely submitted, the court will nonetheless grant leave and has considered the report. If nothing else, the report provides some helpful context -- which is sorely lacking from both parties' other submissions -- as to how the limited benefits policy at issue compares to a major medical coverage plan.[15]

With respect to plaintiffs' actual motion to certify a class, they propose a class action on their fraud claim for: "All Wisconsin residents who purchased an AMLI insurance policy marketed by Cinergy. The class period is January 1, 2007, to the present." (Pls.' Br. in Supp. of Class Cert. (dkt. #43) ¶ 28.) To certify a class pursuant to Federal Rule of Civil Procedure 23, plaintiff must prove that (1) the case satisfies the four requirements of Rule 23(a) -- numerosity, commonality, typicality and adequacy -- and (2) the class can be maintained under one of the subsections of 23(b). Plaintiffs seek to certify a class under 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As described by plaintiffs in their brief in support of class certification, proof of intentional misrepresentation under Wisconsin law requires five elements: "1) That the defendant made a representation of fact; 2) That the representation was untrue; 3) That

---

[15] Also before the court are (1) a motion for leave to submit supplemental authority and (2) a notice of supplemental authority, both filed by plaintiffs. (Dkt. ##77, 94.) The court will grant the motion and has considered *Butler v. Sears, Roebuck & Co.,* Nos. 11-8029, 12-8030, 2013 WL 4478200 (7th Cir. Aug. 22, 2013).

the untrue representation was made by the defendant knowing the representation was untrue or recklessly without caring whether it was true or false; 4) That the defendant intended to deceive and induce the plaintiff to act on it to plaintiff's pecuniary damage; and 5) That the plaintiff believed the representation to be true and relied on it."  (Pls.' Br. (dkt. #43) 10 (citing Wis. JI-Civil 2401 Misrepresentation: Intentional Deceit.)  *See also Malzewski v. Rapkin*, 2006 WI App 183, ¶ 17, 296 Wis. 2d 98, 723 N.W.2d 156 (describing the same intentional misrepresentation elements as in plaintiffs' brief).

Before addressing the specific requirements for class certification here, there are two Seventh Circuit cases that provide helpful guidance in considering class certification of a consumer fraud claim.  In *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008), the Seventh Circuit reversed the district court's order certifying a class because common issues of law or fact did not predominate over issues particular to each putative class member's purchase of the defendant's dryer.  Thorogood alleged that the words "stainless steel" imprinted on the dryer were deceptive because the dryer drum was not made *entirely* of stainless steel.  547 F.3d at 743-44.  In rejecting plaintiff's motion, the Seventh Circuit concluded that a fraud claim necessarily would turn on each class member's understanding of the meaning of the "stainless steel" label, reasoning that at least some portion of the class -- and, based on the court's pointed query, "Does *anyone* believe this besides Mr. Thorogood?", *id.* at 747), perhaps all -- would not share the plaintiff's understanding of this point-of-sale advertisement.  *Id.* at 747.

In *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010), the Seventh Circuit affirmed the district court's grant of class certification, finding that the predominance

18

requirement was met with respect to whether the windows at issue suffered from a single, inherent design defect.  The district court in *Pella* had certified a Rule 23(b)(3) class solely consisting of individuals "who have had a manifest defect and whose windows already have been replaced," but "explicitly declined to certify issues related to causation, damages, and statute of limitations."  606 F.3d at 392-93.  In upholding certification, the Seventh Circuit contrasted the class at issue to that proposed in *Thorogood*:

> In contrast to *Thorogood* where there were no common issues of law or fact and the court questioned whether anyone besides the plaintiff shared the same concerns with the product, here there is an economy to class treatment of the question whether the ProLine windows suffer from a basic design defect[.]

*Id.* at 394.

If *Thorogood* and *Pella* represent two ends of a spectrum for the Seventh Circuit when it comes to meeting the predominance requirement, this case plainly falls near the *Thorogood* extreme.  Indeed, this case is arguably even less suited for class treatment than *Thorogood*:  not only have plaintiffs utterly failed to demonstrate that there is a likely, common understanding of the alleged misrepresentation, the record suggests there is not even a common misrepresentation.  With that in mind, the court reviews each requirement, though this central defect in plaintiffs' motion affects all of the requirements in overlapping ways.

### A. Numerosity

Plaintiffs contend -- and defendants do not dispute -- that approximately 2,700 policies were sold in Wisconsin during the relevant period.  Plaintiffs rely on that number

19

to argue that the numerosity requirement is easily met.  While relying on the number of policies sold is consistent with the class definition, that number -- and, in turn, the class definition -- does not necessarily represent the class of individuals who were actually misled by the advertisements at issue.  Indeed, the parties direct the court to eight or nine consumer complaints in Wisconsin concerning the advertisement or solicitation of the policy at issue.  (Pls.' Br. (dkt. #43) 9-10; AMLI's Br. (dkt. #55) 11.)  While these complaints may represent a small fraction of individuals who were actually misled, some portion of the individuals who purchased AMLI's policy certainly understood the limited nature of the policy and the pre-existing conditions exception.  Still, the Seventh Circuit in *Butler v. Sears, Roebuck & Co.,* , instructs that this concern is not a basis for rejecting class certification.  Nos. 11-8029, 12-8030, 2013 WL 4478200, *2 (7th Cir. Aug. 22, 2013) ("Sears argued that most members of the plaintiff class had not experienced any mold problem. But if so, we pointed out, that was an argument not for refusing to certify the class but for certifying it and then entering a judgment that would largely exonerate Sears.").

### B.  Typicality / Commonality

The next two requirements -- typicality and commonality -- will be considered together.  *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the . . . question of commonality."); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge.").  To satisfy these requirements,

plaintiffs must demonstrate "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

Plaintiffs assert that "[e]very member of the putative Class saw the same commercial, called the same phone number, spoke to a 'call center' sales representative who read from the same, uniform script, and received written policy documents only after committing to purchasing the policy at issue during that phone call." (Pls.' Br. in Supp. of Class Cert. (dkt. 43) ¶ 2.)  Unfortunately for plaintiffs, "the party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993).  Here, plaintiffs are able to cite *no* evidence that supports their sweeping allegations; indeed, the only evidence in the record undercuts any claim that the misrepresentations were uniform.

*First*, the record demonstrates that there were at least two television commercials or infomercials at issue during the relevant time period.  Putting aside any material differences in these two advertisements, the proposed class would include those purchasing policies dating back to January 1, 2007, while neither advertisements aired until late 2008.  (AMLI's Opp'n to Class Cert. (dkt. #55) 13 (explaining that "Sub-Sandwich" commercial began airing on December 1, 2008, and "Mumbo-Jumbo" commercial began airing on September 29, 2008) (citing Stadler Aff., Exs. 1, 2 (dkt. ##56-1, 56-2)).)  Necessarily, some members of the putative class did not see the advertisement (or advertisements) containing the alleged "uniform misrepresentation."

21

*Second*, defendants have submitted evidence that there were at least ten call scripts used by Cinergy between 2008 and 2011.  (Stadler Aff. (dkt. #56) ¶ 3 (describing 127 pages of scripts produced by Cinergy).)  Even if all of the scripts contained the same "uniform misrepresentation," the nature of a telephone conversation -- as demonstrated by the transcript of Mr. Wiedenbeck's 25-minute exchange with the Cinergy representative -- is that the representative is responding to specific, individual questions posed or information received from the customer, meaning the content of actual consumer calls necessary would vary.[16]

Moreover, faced with disclaimer language in the television advertisements and language clarifying the nature of the policy and the scope of the coverage in the single script provided by plaintiffs, the ultimate claim here appears to be that defendants failed to adequately *disabuse* plaintiffs of their belief that they were purchasing a "major

---

[16] Plaintiffs cite to three cases in which they contend "uniform, scripted sales pitches have been found to substantiate fraud in class actions without raising individual issues." (Pls.' Br. (dkt. #43) ¶ 60.)  None, however, provide support for plaintiffs' claim.  In *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit affirmed the district court's certification of a class alleging deceptive sales practices over a class member's objection.  As far as the court can tell, there is no discussion of a sales script.  The specific page of the opinion cited by plaintiffs concerns the predominance requirement, but does not discuss whether individual issues would prevent certification. In *In re First State Alliance Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006), the Ninth Circuit affirmed the district court's grant of class certification, finding an underlying fraudulent scheme predominated over any differences in oral misrepresentations, while plaintiffs' focus is on specific misrepresentations allegedly made by defendants in their television advertisements and telephone calls.  In *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), the court affirmed certification of a class based on misrepresentations in company reports without any reference to sales scripts or individual sale pitches. Even if these decisions had some bearing on the issues here, plaintiffs have failed to direct the court to *any* Seventh Circuit decision approving a class based on misrepresentations in advertisements and sales scripts, which varied over time and which were subject to off-script, individual exchanges.

coverage" plan with no pre-existing conditions exclusion.   Given that, individual responses to specific questions by each customer about the scope of coverage and whether defendants adequately and accurately responded to those questions is not only central to plaintiffs' claim, but also not subject to common proof.

*Third*, there is evidence consumers received other, material information about the policy at issue, which may have impacted their individual purchase decisions.   For example, it is undisputed that purchasers had ten days to cancel the policy from receipt of a member handbook provided post-purchase.   This handbook included such statements as: "Your Cinergy Health Preference Insurance Plan is a Limited Medical Benefit Plan."; "The Cinergy Health Preferred Plans are not major medical insurance."; and "This is **NOT Major Medical Insurance** and is not meant to replace catastrophic health insurance or major medical coverage."  (*See* Affidavit of Henry E. Koltz, Ex. A (dkt. #58-1) 3 (emphasis in original).)  Similarly, whether class members read the plan's description of actual coverage, and whether that language itself clarified any misapprehensions, also undermines plaintiffs' assertion of a uniform misrepresentation. Finally, some consumers may have reviewed Cinergy's and AMLI's websites describing the plan at issue, both of which not only explain the limited nature of the policy at issue, but contrast it with a major medical plan.  (*See* Stadler Aff., Ex. 4 (dkt. #56-4) 11 (describing it as an "alternative to high-priced major medical plans"); *id.* at 12 (describing the plan as a "limited medical plan, not a major medical plan"); *id.*, Ex. 6 (dkt. #56-6) 5 (describing limited benefit plans as "less expensive than individual comprehensive coverage plans because the plan reimburses at a fixed, predetermined amount depending

on the policy.  It does not serve to provide a cap on the consumer's out-of-pocket costs.").)

The above evidence demonstrates that there was no "uniform misrepresentation" to the proposed class.  Wisconsin purchasers received information about the policy through at least two different television advertisements, through multiple sales scripts and off-script exchanges, via a handbook and websites, and by means of the plan language itself.  Even if there were a single, common misrepresentation -- like the point-of-sale advertisement of "stainless steel" in *Thorogood* -- there is no evidence of a common understanding.  The Seventh Circuit has repeatedly rejected attempts to certify a class where a fraud claim turns on an individual's understanding in order to demonstrate causation or reliance.  *See Thorogood*, 547 F.3d at 747 (finding fraud claim turned on each consumer's understanding of "stainless steel"); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (finding proposed class representative's claim not typical of putative class because the "proposed class includes people who knew fountain Diet Coke contained saccharin and bought it anyway. Oshana, on the other hand, claims she was deceived and injured."); *Clark v. Experian Information Solutions, Inc.*, No. 06-3330, 2007 WL 4219471, at *3 (7th Cir. Nov. 30, 2007) (unpublished) (affirming denial of class certification because each class member would have to "prove that the deceptive nature of the website caused each of them to enroll in the credit monitoring service and incur unwanted charges. Such causation cannot necessarily be inferred from the fact that the class is defined as members who did not access the service; individuals could have enrolled in the service knowingly and chosen not to access it."); *see also Siegel v. Shell Oil*

24

*Co.*, 612 F.3d 932, 936 (7th Cir. 2010) (rejecting class certification because fraud claim turned on "individualized question of fact" as to reason putative class members purchased gasoline).

Perhaps in anticipation of this issue, plaintiffs attempt to argue that a fraud claim is subject to common proof because the reasonableness of a consumer's reliance (or whether the reliance is justified) is judged from an "objective" standard.  (Pls.' Br. (dkt. #43) ¶¶ 25-27 (citing *Williams v. Rank & Son Buick, Inc.*, 170 N.W.2d 807, 810-11 (Wis. 1969); *Hennig v. Ahearn*, 230 Wis. 2d 149, 601 N.W.2d 14 (Ct. App. 1999)).  True enough, but an intentional misrepresentation claim under Wisconsin law still requires a plaintiff to demonstrate that he or she *actually* relied on the false representation (*i.e.*, was misled), which is separate from any inquiry as to whether the reliance was justified or reasonable.  And for this element, plaintiffs provide no basis for proving reliance or causation on a class-wide basis.

In certain circumstances, the court could certify the particular issue as to whether a representation was false under Rule 23(c)(4), but, as described above, this case does not even present a uniform representation.[17]  Nor is this case like *Pella* and *Butler*, where there was a dispute as to whether the products at issue (windows and washers) were defective.  A limited benefit medical plan is not in and of itself a "defective" product.  Even plaintiffs' expert offers "no opinion on whether limited benefit medical *per se* is . . . good or bad."  (Report of Elliott S. Flood (dkt. #74) p.1.)  Nor is there a dispute as to

---

[17] The court is certainly mindful of what appears to be an increased willingness of the part of the Seventh Circuit to carve out specific issues for certification -- as in *Pella*  -- but there is simply nothing here which warrants or is even compatible with class treatment.

the nature of defendants' plan as a limited medical benefit plan.  In short, there is no issue -- common or otherwise -- which would benefit from class treatment.

**C. Adequacy**

In support of plaintiffs' motion for class certification, plaintiffs submitted a recorded telephone conversation between Mr. Wiedenbeck and a Cinergy representation and a transcript of that call.  (Laufenberg Aff., Exs. 11, 12 (dkt. # 44-11, 44-12).)  The transcript demonstrates certain weaknesses in the Wiedenbecks' claim.  After a lengthy discussion about the coverage available under the plan, Mr. Wiedenbeck stated that he "just wanted something that's kind of major, major medical you know."  (Laufenberg Aff., Ex. 12 (dkt. #44-12) 11.)  In response, the Cinergy representative explained that the plan had "certain limits" and then reviewed the limitations of coverage again.  (*Id.*)  At the end of the call, the Cinergy representation stated, "Now you understand the medical program is a limited medical benefit insurance plan, although it does qualify as credible coverage.  It is neither a major medical policy nor cash [] insurance." (*Id.* at 14.)  Mr. Wiedenbeck responded, "yes, it is." (*Id.*)  Mr. Wiedenbeck also confirmed that he understood the pre-existing conditions provision.  (*Id.* at 13.)

While the court need not, should not and does not decide the merits of plaintiffs' claim at this juncture, Mr. Wiedenbeck's actual exchange with the Cinergy representative at least calls into question whether (1) the Cinergy representative made a false representation or (2) failed to disabuse Wiedenbeck of any misapprehension on his part. As such, the Wiedenbecks' adequacy as class representatives is dubious.  *See Robinson v.*

26

*Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999) ("[I]f when class certification is sought it is already apparent . . . that the class representative's claim is extremely weak, this is an independent reason to doubt the adequacy of his representation.").

### D. Predominance and Superiority

Finding that the case does not satisfy the typicality and commonality requirements of subsection (a), the court need not consider whether the predominance and superiority requirements of Rule 23(b)(3) are met.  Still, lacking a common issue of fact or law subject to class treatment, this case necessarily fails to meet the predominance requirement as well.  *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012) (explaining that the predominance requirement focuses on whether "the nature of the evidence" necessary to resolve liability -- or some element of liability -- is common to the class) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

ORDER

IT IS ORDERED that:

1) defendant American Medical and Life Insurance Company's motion for judgment on the pleadings (dkt. #40) is DENIED;

2) plaintiffs Harry R. Wiedenbeck and Rhonda L. Wiedenbeck's motion for class certification (dkt. #42) is DENIED;

3) plaintiffs' motion for leave to amend their complaint (dkt. #48) is GRANTED;

4) defendant AMLI's motion to dismiss for lack of jurisdiction (dkt. #57) is DENIED;

27

5) plaintiffs' motion to supplement their motion for class certification (dkt. #76) is GRANTED; and

6) plaintiffs' motion to submit supplemental authorities (dkt. #77) is GRANTED.

Entered this 20th day of September, 2013.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge